STATE ex rel. HOOYER, Relator, v. HICKERSON et al., Respondents.

### St. Louis Court of Appeals, February 18, 1908.

LOCAL OPTION: Cities of 2,500 Inhabitants: Election within Four Years. Where a county has adopted the local option law by an election held for the purpose throughout the county, a city of less than 2,500 inhabitants, which participated in the election, is bound by the law for the period of four years though it may within that period attain 2,500 inhabitants. Such city could not on attaining 2,500 inhabitants within four years resubmit the question and annul the local option law within its boundaries.

### Original Writ of Mandamus.

PEREMPTORY WRIT DENIED AND PROCEEDING DISMISSED.

*N. M. Pettingill* and *Whiteside* and *Rutherford* for relator.

*E. R. McKee* and *Franklin Miller* for respondents.

BLAND, P. J.—This proceeding is by mandamus against the justices of the county court of Scotland county to compel them to grant a license to relator to keep a dramshop in the city of Memphis, in said county. The alternative writ alleges, in substance, that in Oc-

tober, 1905, the city of Memphis contained less than 2,500 inhabitants; that in the same month a majority of the qualified voters of the county of Scotland, including the city of Memphis, at an election held under what is known as the local option law, voted against the sale of intoxicating liquors therein; that afterwards, on May 14, 1906, the mayor and aldermen of said city of Memphis, by a proper petition, passed an ordinance providing for taking a census of said city and caused a census to be taken, the return of which showed that the city contained 2,540 inhabitants, and that afterwards, to-wit: on September 5, 1907, one-tenth of the qualified voters of the city presented to the mayor and board of aldermen a petition praying for an election to be held in said city, to be voted at by the qualified voters of said city and by no others, to determine whether or not intoxicating liquors should be sold within the corporate limits of the city; that the election was duly ordered and regularly held and resulted in 156 votes against the sale of intoxicating liquors and 204 votes for the sale; that afterwards the relator, Frank C. Hooyer, filed his petition in the office of the clerk of the county court, more than ten days before the first day of the November, 1907, term of said court, asking that a license be granted him to keep a dramshop on the first floor of a brick building situated on the south one-third of lot 7, block 12, corner of Monroe and Market streets, in the original town of Memphis, for a period of six months; that the petition was signed by two-thirds of the taxpaying citizens and guardians of minors in said block; that the county court, at said November term took up said petition, considered the same and found that it had been filed more than ten days before the first day of the term and had remained continuously on file for inspection; that the petition was in due form of law, and the city of Memphis at the time said petition was filed was a city of the fourth class and contained more than 2,500

inhabitants; that the petitioner was a law-abiding, tax-paying, male citizen of the city, over the age of twenty-one years, and that more than two-thirds of the tax-paying citizens and guardians of minors owning property in the block where the proposed dramshop was to be located had signed the petition. The court also found that local option had been adopted throughout the county of Scotland, in 1905, and that since its adoption the city of Memphis had attained a population of 2,540 inhabitants and had held a local option election and voted for the sale of intoxicating liquors within its corporate limits. But concluded that as a matter of law, the city was bound by the local option law adopted by the voters of the county at the election held in 1905 for a period of four years from the date of such adoption, and denied the license. All the foregoing facts are set out at length and with great precision in the alternative writ of mandamus, to which respondents filed a demurrer stating as grounds therefor, first, "that said alternative writ fails to state facts sufficient to constitute a cause of action against the respondents, or to entitle relator to the relief sought, or to any relief; second, that upon the face of said alternative writ it appears that relator is not entitled to a peremptory writ of mandamus against these respondents, as prayed for by relator," therefore, the case is before us on the alternative writ and the demurrer thereto. It is conceded by respondents that if relator is entitled to the relief he asks, mandamus is the proper remedy; so the sole question presented for solution is whether, under the facts stated in the alternative writ, the city of Memphis, by attaining a population of 2,540 inhabitants, after the adoption of local option by the entire county, became absolved from the operation of the local option law and, in respect to said law, its territory became segregated from and independent of the county and had the right to submit to the

voters within its corporate limits the question of whether or not intoxicating liquors should be sold in the city. The local option act (chap. 22, art. 3, R. S. 1899) creates or designates three units of territory in which a local option election may be held; first, throughout a county in which there is no incorporated city having at the time of the election a population of 2,500 inhabitants; second, where a county has an incorporated city or town of 2,500 inhabitants or more, throughout the territory of the county outside such city; third, in any incorporated city or town having a population of 2,500 inhabitants or more. [R. S. 1899, secs. 3027, 3028.] In support of relator's contention, that the city of Memphis ceased to be bound by the local option election of 1905 after it attained a population of 2,500 inhabitants and became authorized to hold an election for itself under the provisions of section 3028, he cites Ex Parte Handler, 176 Mo. 383; Cole v. Commonwealth, 39 S. W. (Ky.) 1029; Lafferty v. Huffman, 32 L. R. A. 203; Ex Parte Brown, 34 S. W. 131; and Board of Trustees v. Scott, 101 S. W. (Ky.) 944.

In Ex Parte Handler, supra, l. c. 389, it is said: "The very words 'local option' imply the grant of the right to one locality to adopt and another to decline to avail itself of the law." This is but the enunciation of a self-evident truth which has no particular bearing upon the question in hand.

The case of Cole v. Commonwealth is a Kentucky case and was decided by the Kentucky Court of Appeals on March 27, 1897. Section 2554 of the Kentucky local option law provides "that on petition of a number of voters in each precinct of the territory to be affected equal to twenty-five per cent of the votes at the last election in each precinct, and, when for town or city elections, to the number cast at the last city or town election, the judge of the county court shall direct an election to be held in said county, city or town, district or precinct,

as the case may be, to determine whether spirituous liquors shall be sold therein." It is stated in the opinion that an election was held under this statute in each precinct of Scott county and also, on the same day, in the city of Georgetown, on a separate application by twenty-five per cent of the legal voters of said city. In the county election the result was against the sale and in the city election it was for the sale of intoxicating liquors. The contention was that a separate election could not be had by the city at the time of the election throughout the county and the city should yield to the result of the county election. On this contention the court said: "The local feature of the statute is kept prominent in every part of it. Each subdivision, in emphatic terms, is given a right to determine for itself its local wants; and, if it may not do so independently of other local preferences, it is denied a right expressly given by the language of the law. It may be said, and truly, that the same right is given the county; but if, simultaneously with the exercise of its right to vote on the question, a smaller and independent subdivision of the county, upon which is also conferred the right to exercise its choice, does exercise it, with different results, there is no other way to uphold the law in its entirety than to treat the territory of the smaller subdivision as excepted from the domination of the larger, if it chooses to act independently."

Lafferty v. Huffman, supra, is also a Kentucky case. The suit was by injunction to prevent the county court of Harrison county from issuing license to sell intoxicating liquors in the town of Berry, in said county. In 1884 a special prohibitory law was in force in the magisterial precinct that included the town of Berry. In 1893 the Legislature enacted section 3704, which provides: "That in any town of the sixth class, in which the question as to whether spirituous, vinous, and malt liquors might or should be sold . . . shall hereafter be sub-

mitted to the voters thereof, and the majority of votes cast thereat shall be in favor of the sale of such liquors therein, then the said board of trustees of such town shall have no right, power, privilege, or discretion to refuse to grant licenses to sell such liquors therein until another election is held therein as provided by general laws, and a majority of the voters of that town have voted against the sale of such liquors." On January 31, 1894, the town of Berry, being a town of the sixth class, voted on local option and the result was for the sale of intoxicating liquors. The court held that by section 3704, supra, for local option purposes, the town of Berry was made a complete, separate entity and the trustees thereof were given exclusive control of the local option question, except they could not grant license when prohibited by a previous law until such law should be changed, and that a vote in the new territory was clearly contemplated by said section, and denied the injunction.

The case of Ex Parte Brown, supra, is a Texas case. From what is stated in the opinion it appears the Texas local option statute provides for separate precincts, county and town elections. Section 3236, Sayles Civ. St., provides that no local option election under the preceding article shall be held in the same precinct in less than two years after an election has been held therein. Precinct No. 1 of Burnet county had adopted local option prior to July, 1893. Afterwards, and in less than two years from the adoption of the local option law by the precinct, a new political subdivision was carved out of precinct No. 1 and on July 10, 1893, the new subdivision, by an election held therein, voted for the sale of intoxicating liquors. It was contended that the election having been held in less than two years from the adoption of the local option law the precinct was unauthorized to hold another election, and the election was void. The court held the election was not in the same prescribed

limits as the prior election in precinct No. 1, and was a valid election.

The case of Board of Trustees v. Scott, supra, is a Kentucky case, decided under the amended local option law of the State, enacted in 1906. The amendment retained the subdivision for election purposes of counties, towns and precincts as units for adoption or rejection of the local option law and provided for a local option election throughout the county, but provided that county and town local option elections should not be held on the same day and, in effect, provided, that if a county should be against the sale of intoxicating liquors it should not be lawful to sell in any part of the county. On September 6, 1905, the town of New Castle voted for the sale of intoxicating liquors. On June 11, 1906, a local option election was held throughout the county of Henry, in which New Castle is situated, resulting against the sale of intoxicating liquors. It was held that the town of New Castle was bound by this election and could not grant license to sell intoxicating liquors; it was also held that the statute referring to the second vote within three years had reference to the identical territory.

Commonwealth v. Bottoms, 57 S. W. 493, is also a Kentucky case. A local option election was held throughout the entire county and resulted against the sale of intoxicating liquors. Subsequently a town situated in the county, which had the right to vote for itself, held an election and voted for the sale of intoxicating liquors. It was held that the town election was unauthorized. The court, at page 494, said: "When, therefore, the county has exercised the right to decide the question, it must be held to be conclusive of the question for three years, and no subdivision can undo this decision or vote until the expiration of that time thereafter. But prior to or simultaneously with the vote taken in the county the subdivision may decide for

itself. If the subdivision does not choose to assert its right until after the county vote has been taken, it must be held to have waived, for three years at least, its right to decide for itself, and to be willing to abide by the county vote."

In Commonwealth v. King, 86 Ky. 436, it is held: "The voters of a civil district having, by a vote under the general local option law, prohibited the sale of liquors within the district, the voters of a town forming a part of the same district cannot, by a separate vote under the same law, permit the sale of liquor within the town limits; and a license to retail liquor issued by the county judge, because of such a vote, affords the licensee no protection."

In Ex Parte Pollard, 103 S. W. (Tex.) 878, it is ruled: "Where, after a county had been divided into justices' precincts by the commissioners' court, a local option election was held in one of such precincts by virtue of Constitution, art. 16, section 20, and the legislative act, authorizing such election, which resulted in favor of local option, and thereafter an election precinct within that justice's precinct was detached therefrom by the commissioners' court and attached to another justice's precinct in the county, the act of the commissioners' court in changing the election precinct from the justice's precinct which had adopted local option to another did not repeal local option in the election precinct, but local option would remain in force therein until an election was held by the original territory of such justice's precinct voting it out." Ex Parte Brown, supra, seems to be overruled by the Pollard case and is opposed to the doctrine of Jones v. State, 67 Md. 256, in which the same ruling was made on a similar state of facts.

In 19 Am. & Eng. Ency. of Law, p. 511, par. d, it is said: "The formation of a new district out of the territory of a district which has adopted a local option

law does not affect the operation of the law throughout all of the territory which adopted it, and it is in force in both the old and new districts."

The provisions of the Kentucky and Texas local option statutes, as to details and subdivisions under which local option elections are made and held, are different from ours, and the decisions of the appellate courts of these States construing their statutes furnish but slight aid to a construction of our Act. Section 3028 of the local option act provides for the holding of a local option election in any incorporated city or town of 2,500 inhabitants or more, on a proper petition to the legislative body of such city. The statute provides that for the purpose of determining whether an incorporated town or city shall be governed by the provisions of the law, the legislative body of such city, by ordinance, may cause a census to be taken and cause the result entered in its journal or records, and a certified copy filed in the office of the county clerk of the county in which the city is situated, and this copy is made evidence of the population of the city. The city of Memphis attempted to avail itself of the provisions of this section while prohibition was in force throughout the county in which it is situated, by virtue of the election held in 1905, and in which the city participated. The election of 1905, I think, fixed the status of the entire county, including the city of Memphis, for a period of four years. It is not contemplated by section 3028 that a city under prohibition by virtue of a county election, in which it participated, can proceed under the section, within the four years period, by taking a census and having an election of its own for the purpose of removing prohibition from its corporate limits. The statute means that when a city has not voted on local option and desires to do so and is in doubt as to whether it has 2,500 inhabitants, the mayor and aldermen may cause a census to be taken for the purpose of ascertaining whether or not it can

avail itself of the provisions of the section and hold an independent election. There is no provision in this section, in section 3033, nor in any other section of the act that where a city has participated in an election held throughout the county, it may, within the four years period, if it has 2,500 inhabitants, hold another election for the purpose of determining whether or not intoxicating liquors may be sold within its corporate limits, and I do not think the courts have the power to write such a provision in the law by construction. After an election has been held throughout the county, a change of boundaries of the unit or an increase or decrease of its population, or of the population of any town or city within its boundaries cannot alter the status of the territory as a whole nor of any of its integral parts. [Ex Parte Pollard, supra.] The election of 1905 was throughout the county, in every precinct and city therein, and the voters of the city of Memphis voted at that election, and I think the city of Memphis is estopped, in the absence of any express statutory authority, to hold another election within the four years period. The local option law is dormant in any unit of territory in which an election may be held under the act, until such an election is held. When the election takes place, whether the result be for or against prohibition, the curtain drops and although changes may take place and the scenes may shift on the stage behind the curtain, no power is granted to run it up and hold another election in the same territory, or in any part thereof, within the four years period. The play the voters of Memphis acted is not on the boards and did not lift the "lid." I think the demurrer to the alternative writ should be sustained, wherefore the peremptory writ is denied and the proceeding dismissed at the cost of petitioner. *Nortoni, J.,* concurs. *Goode, J.,* dissents.